19168

SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant, v. Mohammed NASIM, Respondent.

(179 S. E. (2d) 211)

*Messrs. Daniel R. McLeod, Atty. Gen., R. Evan Palmer, Asst. Atty. Gen.,* of Columbia, and *Cary C. Doyle, Esq.,* of Anderson, *for Appellant,*

*Messrs. J. Calhoun Pruitt,* of Anderson, and *Frank K. Sloan,* of Columbia, *for Respondent,*

February 10, 1971.

*Per Curiam:*

This appeal by the South Carolina Highway Department grows out of a land condemnation proceeding. The highway department has acquired for public use an 18/100 acre lot belonging to Mr. Nasim, the landowner. A trial was held before a jury, and the only issue involved was the amount of compensation the highway department should pay the landowner. The jury was charged that under the evidence it could award not less than $550 and not more than $3000. The award was for $2000.

After all evidence was submitted, counsel argued to the jury. Counsel for the highway department did not object to statements by counsel for the landowner during the argument. After the verdict was returned, counsel for the highway department moved for a new trial.

The sole question before the trial judge and now before this court may be phrased as follows:

Did the trial court err in failing to grant the highway department's motion for a new trial, which motion was made on the grounds that the court erred in failing to interrupt the jury argument of the landowner's attorney even though objection was not made until after the verdict, and only then in motion for a new trial.

We hold that the argument of counsel for the landowner was so flagrant, and the likelihood of prejudice so clear, that a new trial is required even though objection was not interposed until after the verdict.

The record reveals that one of the witnesses for the highway department was a Mr. Hopkins. He is a graduate of Clemson College and served for seventeen years as county agent for Anderson County. He has been in the real estate business for eleven years, and has testified in many condemnation cases for the highway department in Anderson County and in several other counties of this State.

Arguments of counsel were recorded and this court has the benefit of the full argument to the jury of all of the attorneys. It is the contention of counsel for the highway department that the argument directed against Mr. Hopkins and his testimony was so vicious that the trial judge should have interrupted counsel of his own volition and stopped the line of argument and instructed the jury to disregard it. It is the contention of the landowner that the argument should have been objected to as it was being made. Some of the argument is as follows:

"I think that the estimate that Mr. Hopkins put on it is ridiculous. I think that when he got up on the witness stand and testified that that piece of property was worth $645.00, I think when he said that he should have asked the Clerk of Court to give the Bible back to let him take his hand back off of it. That is how ridiculous I think it is, and I don't think it is worthy of considering, and I don't think that his testimony and his demeanor on the stand is even worthy of talking about * * *. Compare that kind of testimony with this 'quizzling quivaler', who when you ask him a question, five (5) minutes later he still hasn't answered it * * *.

"* * * No, I suspect on Tuesday or Wednesday you began to realize how come they carry Mr. Hopkins around the State, like a mother carrying a new-born infant. They don't want him to get hurt. That is their baby, that's their 'quizzler.' Do you remember the 'quizzler' back in World War II? The ones back in Germany and France, the ones that sided up with the enemy. It is the worst thing I can think of to call him, and that is the reason I call him that. No, there is nothing personal between he and I, until he gets on that witness stand and swears to God to the tell the truth, and comes up with some ridiculous figures like that, and tries to steal my client's property. He is no friend of mine no longer, and it is wrong, and it is wrong for you to let him do it; and by Thursday of this week you know what he is, and what he stands for. He doesn't stand for the same thing that you and I stand for, fair play and justice. He is out to

take every one of these farm landowners on that road that cuts through there and leads to nowhere * * *.

"Why didn't he believe that yesterday, when he solicited from this quizzling jockey sales in 1967 that they claim comparable."

In addition, counsel referred to Mr. Hopkins as a "State-wide highway department jockey" and as a "great highway robber."

The general rule of this court has been stated as follows:

"It has been settled by many decisions of this court that, except in flagrant cases and where prejudice clearly appears, objection to improper argument of counsel should be made then and there, and comes too late if not made until after the verdict has been rendered." *Johnson v. Charleston and Western Carolina Railway Company,* 234 S. C. 448, 108 S. E. (2d) 777 (1959).

We adhere to that rule. We reverse the case before us because the argument falls within the exception. In the case of *Edwards v. Union Buffalo Mills Co., et al.,* 162 S. C. 17, 159 S. E. 818 (1931), this court held:

"In the case of *State v. King,* 158 S. C. [251], 285, 155 S. E. 409, 421, Mr. Justice (now Chief Justice) Blease said this: 'In the recent case of *State v. Kennedy,* 143 S. C. 318, 141 S. E. 559, we held: "* * * Uncalled for personal abuse of a witness by counsel is objectionable, and will not be condoned or allowed by the court." If the record in any case shows that this salutary rule has been violated, and the effect was, in this court's opinion, to prevent one charged with crime from having the fair and impartial trial, guaranteed to him under the Constitution of this state, this court will exercise its power to uphold the Constitution by reversing the case, with the purpose of giving a defendant the trial to which he is entitled.' "

In *Major v. Alverson, et al.,* 183 S. C. 123, 190 S. E. 449 (1937) this court held:

"We think that a new trial should have been ordered. Counsel, of course, had the right to analyze the testimony and to point out to the jury any reason or reasons why he thought the witness Alverson was unworthy of belief. But he can offer no excuse for stating to them, in so many words, that the litigant was a liar, or a 'bare faced liar.' Such a statement was not only highly improper as an argument, but amounted to an abuse of the witness and tended to greatly prejudice defendant's case in the eyes of the jury. In short, where counsel applies to a witness or litigant abusive epithets, he will do so at his own peril.

"Upon consideration of the whole matter, we think a flagrant case is here presented where prejudice clearly appears, which makes it an exception to the rule requiring timely notice to be given."

Improper argument would not entitle the appellant to a new trial unless it be found that the same was prejudicial. Often it is difficult to determine whether argument has caused prejudice. From a study of the whole of the argument and of the record in the case, we think that the likelihood of prejudice is sufficiently strong to necessitate a new trial.

While it is true that the trial judge has very broad discretion in the conduct of trial, the rule does make exception for "flagrant cases and where prejudice clearly appears." In light of the vicious inflammatory nature of the remarks made we conclude that this case presents the exception allowed by our rule in *Johnson, supra.*

It is a general rule of law that inflammatory remarks made by counsel in argument which are calculated to appeal to the passions or prejudices of a jury should be affirmatively condemned by the trial court. 88 C. J. S. Trial § 187.

In the final analysis, whether or not the particular arguments are so prejudicial as to constitute reversible error depends upon the nature of the utterances and the circumstances under which they were made. Here the remarks

were so vicious and the likelihood of prejudice so strong that we are persuaded that the highway department did not receive a fair and impartial trial which is the inherent right of every litigant.

We find the following from *Ryan v. Monson,* 33 Ill. App. (2d) 406, 179 N. E. (2d) 449 (1961), an Illinois decision on similar facts, very persuasive on this point:

"If the argument of counsel is seriously prejudicial, a court should, of its own motion, stop the argument and direct the jury not to consider it. *McWilliams v. Sentinel Publishing Co.,* 339 Ill. App. 83, 89 N. E. (2d) 266; *Rudolph v. City of Chicago,* 2 Ill. App. (2d) 370, 119 N. E. (2d) 528. If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved thereon."

A reading of the full argument of the landowner's attorney reveals that he gave to the jury his own personal opinion on several occasions. At one point he said, "Of course, I knew what Mr. Crane's estimate was, and frankly I think in this case he is low. He is my witness, and I put him up, but I do really think he was low in this case. I think he would be overly fair to the State Highway Department, but I think he is low. I think that property, for commercial use, and that is what it was, is worth $3,500.00, * * *."

Inasmuch as a new trial must be held, and for the guidance of the bar in all matters, we call attention to the ruling of this court in *Harper v. Bolton,* 239 S. C. 541, 124 S. E. (2d) 54 (1962), wherein it was held that counsel should not give his own personal opinion as to fact in issue. This is consistent with 53 Am. Jur. TRIAL, § 483.

Our ruling in reversing this case should not be interpreted as lessening the obligation of counsel to object to erroneous

argument made by an adversary. It is only because of the unusual nature of the argument, and the fact that the argument was recorded so as to be subject to review by both the lower court and this court, that we reach the conclusion that a new trial must be had. It is important that the ruling in *Johnson, supra,* be adhered to so that the exact verbiage complained of can be recorded, and such that counsel can be admonished, and such that the judge can issue proper instructions in an effort to cure the error and prevent the necessity of a new trial.

A new trial is ordered and the case is

Reversed and remanded.