### 24045

TOYOTA OF FLORENCE, INC., a corporation, Respondent-Appellant v. Danny Ray LYNCH; JM Family Enterprises, Inc.; Southeast Toyota Distributors, Inc.; Tender Loving Care Corp.; World Omni Financial Corp.; World Omni Leasing, Inc.; Joyserv Co., Ltd.; Carnett-Partsnett Systems, Inc.; Toyoguard, Inc.; James D. Moran; John Joseph McNally; Terry Moore; W.M. Donohoe; Orville Verner; Al Hendrickson; Robert MacGregor; Dennis Puskaric; Tom Nardelli; and Toyota Motor Sales, U.S.A., Inc., Defendants, Of which JM Family Enterprises, Inc.; Southeast Toyota Distributors, Inc.; Tender Loving Care Corp.; World Omni Financial Corp.; and World Omni Leasing, Inc. are Appellants-Respondents. And Richard L. BEASLEY, Respondent-Appellant v. Danny Ray LYNCH; JM Family Enterprises, Inc.; Southeast Toyota Distributors, Inc.; Tender Loving Care Corp.; World Omni Financial Corp.; World Omni Leasing, Inc.; Joyserv Co., Ltd.; Carnett-Partsnett Systems, Inc.; Toyoguard, Inc.; James D. Moran; John Joseph McNally; Terry Moore; W.M. Donohoe; Orville Verner; Al Hendrickson; Robert MacGregor; Dennis Puskaric; Tom Nardelli; and Toyota Motor Sales, U.S.A., Inc.,

---

Defendants, Of which JM Family Enterprises, Inc.; Southeast Toyota Distributors, Inc.; Tender Loving Care Corp.; World Omni Financial Corp.; and World Omni Leasing, Inc., Appellants-Respondents.

(442 S.E. (2d) 611)

Supreme Court

*Raymond W. Bergan, John G. Kester, Daniel F. Katz, Thomas F. Urban, II* and *Paul B. Gaffney,* of *Williams & Connolly,* Washington, DC, *Thomas E. Smith, Jr.,* of *Smith & Floyd, P.A.,* Pamplico, and *James H. Quackenbush, Jr.* and *Hardwick Stuart, Jr.,* of *Adams, Quackenbush, Herring & Stuart,* Columbia, *for appellants-respondents.*

*D. Kenneth Baker* and *Cely Baker Reynolds,* of *D. Kenneth Baker, P.A.,* Darlington, *for respondents-appellants.*

Heard Feb. 15, 1994.

Decided Apr. 4, 1994. Reh. Den. May 6, 1994.

FINNEY, Acting Chief Justice:

Appellants-respondents appeal from two jury verdicts in favor of respondents-appellants, a criminal contempt order, and an order imposing a sanction. We reverse the sanction order and the finding of criminal contempt, and reverse and remand the verdicts. Respondents-appellants cross-appeal the lower court's setting aside of a separate criminal contempt order against appellants-respondents for posttrial juror contact. This appeal is dismissed.

## I. *Procedural Background*

Appellants-respondents are two corporations, Southeast Toyota Distributors (S.E.T.) and JM Family Enterprises (JM), generally referred to in this opinion as S.E.T. JM, a holding company, is the sole shareholder in S.E.T. S.E.T. is a regional Toyota distributor, covering the states of North and South Carolina, Alabama, Georgia, and Florida. Respondents-appellants are an automobile dealer, Toyota of Florence (T.O.F.) and its sole shareholder, Richard Beasley (Beasley).

Beasley and T.O.F. sued S.E.T. and JM and the suits were consolidated. The jury returned a verdict for Beasley on two causes of action: fraud and intentional interference with a contract. T.O.F. also received jury verdicts on two different

causes of action: violation of the state Regulation of Manufacturers, Distributors and Dealers Act (the Act)[1] and RICO.

The trial judge required Beasley and T.O.F. to elect a verdict *without prejudice* to their rights as to the unelected verdict should this Court reverse on appeal.[2] Beasley elected the contract claim, for which he received $1 million in compensatory damages and $2 million in punitive damages. Although the jury returned this verdict against S.E.T. *only*,[3] the trial judge ordered judgment entered against both S.E.T. and JM. On appeal, Beasley concedes this ruling constitutes reversible error. T.O.F. elected its Act verdict, in which the jury awarded it compensatory damages of $5 million and punitive damages of $3.5 million against both S.E.T. and JM. The trial judge remitted the compensatory award to $4,525,232, then doubled it to $9,050,464 pursuant to § 56-15-10(1) (1991). He also awarded T.O.F. $830,000 in attorneys fees and costs pursuant to the Act.

After trial the judge entertained several contempt issues. JM and S.E.T. appeal a contempt finding for pretrial publicity, and a sanction not connected with any contempt finding requiring them to pay "costs" of $6,500. Beasley and T.O.F. cross-appeal the refusal to hold JM and S.E.T. in criminal contempt for contacting jurors after the trial.

## II. *Facts*

Danny Lynch was a car wholesaler in the Pee Dee area of South Carolina. In the fall of 1985 he approached an S.E.T. management employee, Nardelli, about obtaining a Toyota dealership. S.E.T. employees met with Lynch and suggested he approach the current Florence Toyota dealer (Jordan) about selling his dealership. Danny Lynch was repeatedly told Jordan was disfavored by S.E.T. because he was not a "team player," that is, he did not participate in various programs offered by S.E.T. and different JM companies.[4] Among other

---

[1] S.C. Code Ann. §§ 56-15-10 et seq. (1991).

[2] This ruling has not been appealed to this Court. Under our disposition, however, these verdicts against the appellants-respondents must also be set aside.

[3] Actually, against S.E.T. and defendant Nardelli, who is not a party to this appeal.

[4] Among these companies are the appellants-respondents Tender Loving Care Corp., World Omni Financial Corp., and World Omni Leasing, Inc., all owned in whole or in part by JM.

things, Lynch was informed of bogus sales reporting practices encouraged by S.E.T. in which Jordan did not participate.

After Lynch had negotiated with Jordan to buy his dealership, S.E.T. told Lynch he was not financially qualified as a purchaser. Lynch turned to his long-time banker, Beasley, as a potential investment partner in the dealership. After investigating the deal and in partial reliance on documents shown him by S.E.T. employees, Beasley agreed to participate. He was to receive 49% of the stock, and Lynch was gradually to buy Beasley's shares.

After the sale was closed, S.E.T. told Lynch and Beasley their financial statement was short $400,000 in capital and would be rejected by the national Toyota distributor. Beasley walked away from the deal at that point, content to take his losses. At the suggestion of S.E.T., Lynch falsified $400,000 worth of used cars and added this "asset" to the financial statement. The sale of the Jordan dealership to Lynch and Beasley was approved by the national distributor and Lynch began managing the business in February 1986. Lynch was forced out as manager approximately fifteen months later, and Beasley bought all Lynch's stock.

### III. *General Trial Errors*

S.E.T. and JM argue that certain trial errors so prejudiced the proceedings that the jury verdicts must be set aside. We agree that the closing argument of nominal defendant Danny Lynch's counsel requires the verdicts be reversed. We have also addressed certain other issues that will arise on retrial.

Lynch was a nominal defendant at trial. On the last day, however, he signed a settlement which included an agreement that he receive 10% of the first $5 million recovered by T.O.F., and 27% of all amounts in excess of $5 million. During his closing argument Lynch's counsel asked for damages against S.E.T. and JM despite having been warned by the judge not to do so, and illustrated his argument with hand-drawn posters.

Three posters depict men identified in the drawing with S.E.T. engaged in various acts: (1) paying off an S.E.T. witness and giving him answers to questions; (2) offering money to a blindfolded man; and (3) feeding documents into the S.E.T. shredder. The S.E.T. men all have black hair and

vaguely Oriental features. The intent to identify the S.E.T. defendants with the Japanese is obvious when the drawings of the S.E.T. employees are compared with the poster depicting the "bad" American defendant. Another poster depicts a map of the Southeastern United States with the states served by S.E.T. colored in. A rather amorphous blob is drawn in each state; when viewed with counsel's contemporaneous argument, "This is the five-state area, and it's blown up all over the Southeast," it becomes clear that the blobs represent mushroom cloud explosions.

S.E.T. made no contemporaneous objection to these posters and, in fact, did not even view their details until after all closing arguments. Even then, S.E.T. made no objection or request for a mistrial until its posttrial motions. When the issue was raised, Lynch's counsel defended the drawings saying the individuals were not intended to look Oriental, but rather were supposed to be Italian-looking. It is very telling that counsel defended the accusation he was evoking a racial prejudice by contending he was instead trying to imply an ethnic stereotype.

The trial judge ruled S.E.T. had waived any objection to the posters because the objection came too late, and denied a new trial motion on this ground. The general rule is that the lack of a contemporaneous objection to an improper argument acts as a waiver. *Varnadore v. Nationwide Mutual Ins. Co.*, 289 S.C. 155, 345 S.E. (2d) 711 (1986). This Court has held, however, that even in the absence of a contemporaneous objection, a new trial motion should be granted in flagrant cases where a vicious, inflammatory argument results in clear prejudice. *South Carolina Highway Dept. v. Nasim*, 255 S.C. 406, 179 S.E. (2d) 211 (1977). We can hardly conceive of a more outrageous argument than that made here. While we do not condone S.E.T.'s failure to make a contemporaneous objection, we find it would be wholly unreasonable for any attorney to anticipate this type of abhorrent conduct.

Prejudice is clear, especially since the trial judge found it necessary to remit the actual damages awarded to T.O.F. We reverse and remand both jury verdicts against S.E.T. and JM under the extraordinary circumstances here.

S.E.T. and JM also seek reversal because of the testimony of nominal defendants Lynch and Nardelli and the actions of

their attorneys who, throughout the trial, advanced the plaintiffs' cause and impugned the defense. While we express grave reservations about the impact of these actions on the fairness of the original trial, we do not reverse on this ground having already reversed because of the improper closing argument. We are confident the parties' rights to a fair trial can be protected in any future proceeding. For example, parties can ask the trial court to sever claims, and can ask that attorneys not be allowed to argue evidentiary issues adverse to their clients' positions. If these types of requests are made and granted, the trial court should not hesitate to grant a mistrial where its rulings are violated to the prejudice of those they are intended to protect.

### IV. *The Act*

The jury returned a verdict for T.O.F. under the Act against both S.E.T. and JM. JM contends this verdict against it should be set aside because it is not one of the entities which can incur liability under the Act. We agree.

T.O.F. alleged damages as the result of violations of S.C. Code Ann. § 56-15-40 (1991). This statute makes it unlawful for a manufacturer, factory branch or division, factory representative, distributor, wholesaler, distributor branch or division, distributor representative, motor vehicle dealer, or wholesale branch or division, to engage in certain conduct. *Id.* These terms are defined in S.C. Code Ann. § 56-15-10 (1991). While S.E.T. is both a distributor and a franchiser under the Act, § 56-15-10(g) and (j) (1991), there is no provision making the *owner* of such an entity liable. *Cf.,* § 56-15-10(n) (liability extended to an entity in which S.E.T. has a majority interest or effectively controls). The judgment against JM under the Act shall be set aside.

S.E.T. also argues the trial judge erred in holding certain releases contained in Dealer Agreements T.O.F. entered with S.E.T. void under the Act as a matter of law. We agree.

In 1986, 1987, and 1989, T.O.F. entered Dealer Agreements with S.E.T. Each of these Agreements contained the following release:

. . . each party hereby releases the other from any and all claims, causes of action or otherwise that it may have

against the other for damages arising from any event occurring prior to the date of execution of this Agreement. . . .

This release provision was omitted from a subsequent Dealer Agreement signed after this litigation was brought.

The Act makes it unlawful *"to require* a motor vehicle dealer to assent to a release. . . ." S.C. Code Ann. § 56-15-40(3) (k) (1991) (emphasis added). The trial judge struck the release defense holding that any liability release is void as against public policy, relying on S.C. Code Ann. § 56-15-130 (1991) which provides "Any contract or part thereof . . . in violation of this chapter shall be deemed against public policy and shall be void and unenforceable."

The trial judge erred in holding any and all releases void under the Act. The plain language of § 56-15-40(3)(k) invalidates a release only if the dealer is *required* to assent to it. Terms in a statute should be given their plain and unambiguous meaning. *Miller v. Doe,* — S.C. —, 441 S.E. (2d) 319 (1994). The judge's ruling striking the releases is based on an erroneous reading of the statute and is therefore reversed. Whether, in fact, T.O.F. was required to assent to any of the releases is a matter to be determined at a future proceeding.

Finally, S.E.T. contends the lower court erred in both doubling the jury's actual damage award and upholding the punitive damages award under the Act. S.E.T. relies on cases holding it is error to allow a party to recover both statutorily enhanced actual damages and common law punitive damages for the same act. *See, e.g., Adamson v. Marianne Fabrics, Inc.,* 301 S.C. 204, 391 S.E. (2d) 249 (1990). Here, however, the enhancement of actual damages and the award of punitive damages are allowed by the terms of the Act itself. S.C. Code Ann. § 56-15-110(1) and (3) (1991). S.E.T. failed to challenge this statutory scheme at trial, and cannot properly challenge it for the first time on appeal. *Talley v. South Carolina Higher Educ. Tuition Grants Comm.,* 289 S.C. 483, 347 S.E. (2d) 99 (1986); *see also Columbia (SC) Teachers Fed. Credit Union v. Newsome Chevrolet-Buick,* 303 S.C. 162, 399 S.E. (2d) 444 (Ct. App. 1990) (Court of Appeals upheld right to recover both actual and punitive damages under the Act).

## V. *Intentional Interference with a Contract*

S.E.T. argues that Beasley suffered no injury separate and apart from that suffered by his corporation, T.O.F., and therefore he cannot properly maintain a cause of action for S.E.T.'s intentional interference with his contract with Lynch. The record shows no objection to evidence Beasley suffered mental anguish as a result of S.E.T.'s action. Evidence received without objection is competent. *Cantrell v. Carruth*, 250 S.C. 415, 158 S.E. (2d) 208 (1967). Further, the jury was charged, without objection, that it could award compensatory damages for emotional as well as economic loss. Since there was no objection, this is the law of the case in this appeal. *Mickle v. Blackmon*, 255 S.C. 136, 177 S.E. (2d) 548 (1970).

Since there was competent evidence at this trial that Beasley suffered damages separate and apart from T.O.F.'s losses, S.E.T.'s JNOV motion was properly denied. *Kinard v. Crosby*, — S.C. —, 433 S.E. (2d) 835 (1993). Whether economic loss is recoverable at all in this type of action for intentional interference with a contract is a novel question in South Carolina. *Compare Todd v. South Carolina Farm Bureau Ins. Co.*, 276 S.C. 284, 278 S.E. (2d) 607 (1981), appeal after remand, 283 S.C. 155, 321 S.E. (2d) 602 (Ct. App. 1984), quashed in part on cert., 287 S.C. 190, 336 S.E. (2d) 472 (1985) (mental anguish damages recoverable by former employee in his action for intentional interference with his employment contract against one maliciously causing the employee's discharge). We do not reach this issue here, however, since it was not properly preserved below for our review.

### VI. *Contempt*

The lower court originally held S.E.T. in contempt for contacting jurors after the trial but later vacated its contempt finding. The court, however, ordered S.E.T. to pay $6,500 "costs" incurred in investigating the contempt issue. S.E.T. appeals the imposition of these costs, and T.O.F. and Beasley cross-appeal the portion of the order vacating the contempt finding.

The purpose of a criminal contempt order is to vindicate the rights of the State, not the individual party. *State v. Nathans*, 49 S.C. 199, 27 S.E. 52 (1897). T.O.F.

and Beasley are not aggrieved by the order vacating the contempt finding and therefore may not appeal from it. Rule 201 (b), SCACR; *Cisson v. McWhorter*, 255 S.C. 174, 177 S.E. (2d) 603 (1970) (Supreme Court has "duty to reject an appeal . . . prosecuted by a party who is not aggrieved"). This appeal is dismissed.

S.E.T. challenges the authority of the trial judge to order it to pay $6,500 costs here. Costs are creatures of statute, and while the judge had authority to impose a sanction for contempt, there is no authority for a sanction, fine, or imposition of costs in the absence of an applicable statute, rule, or contempt finding. This order requiring the payment of "costs" is reversed.

In September 1991, the parties learned this case would be called for trial in Darlington County beginning January 20, 1992. In December 1991, JM and S.E.T. decided to make a $10,000 contribution, part of which would go to a school in Darlington.

The week before trial the contribution was announced at a press conference arranged by JM and S.E.T. and reported in the local papers and on the local television news. The judge found JM and S.E.T. in criminal contempt for arranging this pretrial publicity and imposed a $10,000 fine to be paid either to the clerk of court or the Darlington County School Board. S.E.T. complains this order is invalid for several reasons. We reverse.

Constructive contempt, such as that alleged here, is that occurring outside the presence of the Court. *State v. Johnson*, 249 S.C. 1, 152 S.E. (2d) 669 (1967). Charges of constructive contempt are brought by a rule to show cause which must be based upon an affidavit or verified petition. *Id.* The failure to support the rule to show cause by an affidavit or verified petition is a fatal defect. E.g., *State v. Blackwell*, 10 S.C. 35 (1878). Here, there was neither an affidavit nor a verified petition and S.E.T. timely objected. The contempt order must be reversed. *State v. Blackwell, supra.*

## VII. *Conclusion*

We set aside the jury verdicts against JM under both causes of action. We reverse and remand both jury verdicts against S.E.T. because of defendant Lynch's attorney's clos-

ing argument. We vacate the criminal contempt finding and fine, and the $6,500 sanction imposed on the appellants-respondents. We dismiss the appeal from the order setting aside the finding of criminal contempt. Each party shall bear its own appellate costs and attorneys' fees, except that the cost of procuring and reproducing the transcript and record on appeal shall be evenly divided between the appellants-respondents and the respondents-appellants.

Affirmed in part; dismissed in part; reversed and remanded.

TOAL and MOORE, JJ., and WALTER J. BRISTOW, JR. and JASPER M. CURETON, Acting Associate Justices, concur.