632 S.E.2d 281

**The STATE, Respondent,**

v.

**Johnny O'Landis BENNETT, Jr., Appellant.**

No. 26174.

Supreme Court of South Carolina.

Heard April 4, 2006.
Decided June 26, 2006.

220

Assistant Appellate Defender Robert M. Dudek and Assistant Appellate Defender Aileen P. Claire, both of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, and Donald V. Myers, of Lexington, for Respondent.

Chief Justice TOAL.

This is an appeal from a capital sentencing proceeding. Appellant contends the trial court committed three errors warranting reversal. First, the trial court refused to allow defense counsel to ask jurors whether they would "stick with their vote or go with the majority" during *voir dire*. Second, the trial court determined that certain testimony and evidence about a prior offense was not inadmissible "victim impact" evidence. Third, the trial court ruled that remarks made by the Solicitor did not unfairly inject racial issues into the trial. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Appellant received several criminal convictions in connection with the murder of Benton Smith (Victim). The evidence established that Victim was last seen leaving his residence accompanied by Appellant. After police and family members searched for Victim for several days, Appellant led police to Victim's body which was buried under wood brush behind Appellant's sister's home. Victim had been stabbed approximately seventy (70) times with a Phillips head screwdriver and died as a result of internal bleeding. Appellant gave conflicting statements to police; first denying any knowledge of Victim's murder, then confessing to the murder, and finally recanting and maintaining his innocence. After a sentencing proceeding, the jury sentenced Appellant to death.

This Court affirmed Appellant's convictions but reversed his death sentence. *State v. Bennett*, 328 S.C. 251, 493 S.E.2d 845

(1997). During Appellant's second sentencing proceeding, he objected to (1) the trial court's decision to exclude a question from *voir dire*, (2) the introduction of testimony and evidence regarding a prior conviction for assault and battery of a high and aggravated nature (ABHAN), and (3) comments made by the Solicitor during cross-examination of a witness and during closing arguments.

Specifically, Appellant alleged the trial court improperly excluded the "will you go with the majority or hold to your decision" question from *voir dire*. The trial court found that the question tended to suggest the possibility of a hung jury and "the fact that [the juror] can hold things up." The court held that the defense could ask a juror "if they understand that by their oath that [sic] they should make their own determinations of the facts ... but certainly we cannot get into pitting them against the other jurors." *Id.*

Additionally, Appellant alleged that the trial court allowed the mothers of the two ABHAN victims to present impermissible "victim impact" testimony, that the trial court improperly admitted highly prejudicial hospital photographs of the two ABHAN victims, and that the trial court improperly allowed one of the ABHAN victims to testify about a dream he had in which "black Indians" were chasing him. The trial court determined that the testimony and photographs were relevant to Appellant's character and admissible as details of prior criminal convictions. Also, the trial court noted that the "black Indians" comment was mentioned only once, was not elicited by the State, and did not prejudice Appellant.

Furthermore, Appellant alleged that the Solicitor improperly injected racial issues into the sentencing proceeding by making inappropriate comments while questioning a witness. While cross-examining a witness about a former prison guard who had engaged in a sexual relationship with Appellant, the witness asked the Solicitor, "You mean the big girl?" The Solicitor responded, "You know, the blond lady?" The trial court found that this reference did not improperly inject race into the trial.

Finally, Appellant alleged that the Solicitor attempted to inject racial issues into the sentencing proceeding by making inappropriate remarks during the State's closing arguments.

In his closing arguments, the Solicitor compared Appellant's size and violent acts to those of "King Kong" and a "Caveman." Appellant first objected to these comments in his motion for a new trial, and the trial court determined that these comments properly described the circumstances surrounding the murder, Appellant's character and violent background, his disregard for prison rules, his size, strength, and destructiveness, and were invited responses to Appellant's mitigating evidence and argument.

This appeal followed, and Appellant raises the following issues for review:

I. Did the trial court err in excluding the "will you go with the majority" question from *voir dire?*

II. Did the trial court err in admitting certain evidence regarding Appellant's prior ABHAN conviction?

III. Did the Solicitor's comments during cross-examination of a witness or during closing arguments improperly inject racial issues into the trial?

## LAW/ANALYSIS

### I. *Voir Dire*

 Appellant argues that the trial court improperly excluded the "will you go with the majority" question from *voir dire*. We disagree.

 In general, both the scope of *voir dire* and the manner in which it is conducted are within the sound discretion of the trial judge. *State v. Hill,* 361 S.C. 297, 308, 604 S.E.2d 696, 702 (2004). "To constitute reversible error, a limitation on questioning must render the trial 'fundamentally unfair.' " *Id.*

Our opinion in *State v. Hill* controls on this issue. In *Hill,* the trial court refused to allow the defense to ask jurors whether they would "give up their vote in order to go with the majority." *Id.* at 308, 604 S.E.2d at 702. Hill argued that this was improper because our opinion reversing Appellant's death sentence condoned the use of the "go with the majority" question. *Id.* Disagreeing, this court clarified that we reversed Appellant's death sentence because the trial court improperly qualified and seated a juror who answered that he

would indeed "go with the majority" over his own determination. *Id.* at 309, 604 S.E.2d at 702. Ultimately, this Court held that a review of entire *voir dire* indicated that Hill's jurors were unbiased, impartial, and capable of following the instructions on the law. *Id.* at 310, 604 S.E.2d at 702. Relying on the highly deferential standard of review in *voir dire* cases, we stated:

> [W]hat is constitutionally mandated is the selection of a fair and impartial jury. No particular formula of questions is mandated to achieve this goal. In our justice system, the trial judge has the discretion and the duty to monitor the *voir dire* so as to ensure that the jury selected measures up to the constitutional standard. The judge's ruling in this case, disallowing defense counsel to question jurors about their propensity to go with the majority, did not render the trial "fundamentally unfair."

*Id.* at 310, 604 S.E.2d at 702–03.

Our review of the entire *voir dire* in this case reveals that Appellant had an impartial jury. As in *Hill*, the trial court extensively questioned each juror regarding the ability to be fair and impartial, and there is no evidence suggesting that any juror failed in these capacities. Because the evidence in the record supports only the conclusion that Appellant received a fair and impartial jury, and because there is no evidence suggesting that the trial court's *voir dire* limitation rendered Appellant's trial "fundamentally unfair," we affirm the trial court's decision.[1]

---

1. Appellant urges us to reconcile a perceived conflict between *Hill* and our opinion in Appellant's first appeal before this Court. As we stated in *Hill*, *Bennett* did not determine the appropriateness of the "go with the majority question." *Hill*, 361 S.C. at 309, 604 S.E.2d 702. In fact, the only issue in *Bennett* was whether the questioned juror was "unbiased, impartial, and able to carry out the law as executed." *Id.* Although Appellant properly points out that the court might never have discovered the juror in his first trial without the "go with the majority" question, it is equally true that no amount of questioning can provide a clear picture of a juror's biases or tendencies. *Wainwright v. Witt*, 469 U.S. 412, 424–25, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). "[T]hese veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings." *Id.* This position is strengthened by our previous recognition of the trial judge's duty to focus *voir dire* upon matters enumerated in the death penalty statutes and to eliminate excessive

228

## II. Evidence of Prior Convictions

Appellant argues that the trial court erred in admitting the ABHAN victims' mothers' testimonies, the hospital photographs, and the testimony about the victim's "black Indians" dream because this evidence was impermissible "victim impact" evidence of prior crimes. We disagree.

In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that the Eighth Amendment did not prohibit a jury from considering "victim impact" evidence at the sentencing phase of a capital trial. In *Payne*, a brutal double murder, the defendant challenged the admission of testimony that the child of one of the victims "missed his mother" and the State's remarks in closing arguments suggesting that the continuing effects of the crimes on the victims' family favored imposing the death penalty. *Id.* at 816. Drawing on historical arguments and reasons of fairness, the Supreme Court held that a state was not constitutionally prohibited from allowing a capital sentencing jury to consider "the specific harm caused by the defendant," including the impact of the murder on the victim's family and "a quick glimpse of the life which the defendant chose to extinguish." *Id.* at 822–26.

■ Contrary to Appellant's assertions, none of the testimony at issue in this case was "victim impact" evidence. First, the mothers' testimonies were limited to the circumstances surrounding the ABHAN and the extent of the injuries their sons suffered. This evidence was clearly not evidence of the character of the victims or the impact on their families, but rather, evidence of the physical injuries caused by Appellant. That the descriptions of the victims' injuries came from their mothers does not automatically convert factually descriptive testimony into impact testimony regarding the victims' character or the effect on the victims' families or community.

■ Similarly, there can be no question that the hospital photographs were introduced to describe the extent of the

intrusions into the privacy of prospective jurors. *State v. Plath*, 281 S.C. 1, 7, 313 S.E.2d 619, 622 (1984) (*citing State v. Koon*, 278 S.C. 528, 532, 298 S.E.2d 769, 771 (1982)).

injuries the ABHAN victims suffered. These photographs are easily distinguished from cases where photographs have been deemed "victim impact" evidence. *See State v. Langley,* 334 S.C. 643, 515 S.E.2d 98 (1999) (photograph of murder victim in his high school graduation regalia); *see also State v. Livingston,* 327 S.C. 17, 488 S.E.2d 313 (1997) (photograph of victim and her husband taken shortly before victim was involved in fatal accident). Although, like in *Langley* and *Livingston,* the photographs in this case were certain to elicit an emotional response from the jury, these photographs were highly probative of the nature of Appellant's prior crime in that they provided the clearest picture of the aggravated nature of the assault and battery.

■ Finally, we hold the victim's testimony about his "black Indians" dream was not "victim impact" evidence. This testimony merely described the emotional injury to the ABHAN victim.

Though masquerading as a horse of the same color, the dissent decides an entirely different case from the one at bar. At the sentencing proceeding, Appellant argued the testimony about the ABHAN victims' injuries was "inappropriate victim impact type of information having nothing to do with the particular crime Mr. Bennett is on trial for now." Likewise, it appears Appellant's objection to the hospital photographs was based on Rule 403, SCRE (excluding relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice). Finally, Appellant objected to the introduction the victim's dream on the grounds of relevance. Before this Court, however, Appellant did not couch these objections in terms of relevance or a Rule 403 analysis. Instead, the *only* theory Appellant presented to this Court on this issue was that this evidence should have been excluded as impermissible victim impact evidence of prior crimes.

■ Because the evidence in this case was not victim impact evidence, Appellant's argument must fail. When asked to do so, we will consider arguments regarding the types of evidence of prior crimes that should and should not be admissible in a capital sentencing proceeding.[2] However, we feel

2. Academically, South Carolina has long recognized that information about prior convictions is admissible in a capital sentencing proceed-

that the delicate task of balancing the duty to conduct a sentencing inquiry "broad in scope," *Dawson,* 503 U.S. at 164, against the need to protect a capital defendant from unfair prejudice and prevent a capital sentencing proceeding from transmuting into a sentencing referendum on all of the defendant's prior crimes is only properly performed when that case is presented. Such a case would no doubt involve considerations of when the introduction of evidence renders a proceeding so unfair as to violate due process, *see Payne,* 501 U .S. at 831, and also would implicate our rules of evidence; rules which, at the most basic level, allow proof of character by specific instances of conduct. *See* Rule 405, SCRE.

Instead of addressing any of these topics, which would be of paramount importance when considering clarifying our relevance rules, the briefs to this Court, like Appellant's argument, concerned only victim impact evidence. Under these circumstances, we feel the better course is to confine ourselves to a careful analysis of the arguments briefed and presented to us. *See State v. Torrence,* 305 S.C. 45, 69, 406 S.E.2d 315, 328 (1991) (abolishing *in favorem vitae* review in capital cases). Although the dissent raises intriguing questions, we think it the better course to wait to decide such a case until we are asked. *See State v. Prioleau,* 345 S.C. 404, 411, 548 S.E.2d 213, 216 (2001) (appellate court will not consider issues not properly presented).

Based on the above reasoning, we hold that the testimony about the ABHAN victims' injuries and the corresponding photographs was not impermissible victim impact evidence relating to Appellant's prior crimes.

---

ing. *See State v. Gaskins,* 284 S.C. 105, 124, 326 S.E.2d 132, 143 (1985); *and State v. Plath,* 281 S.C. at 9, 313 S.E.2d at 623 (stating that this rule is so fundamental that it requires no citation of authority). This rule is derived from the principle that receiving evidence of prior crimes is probative of the character of the defendant and consistent with the sentencing authority's duty to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Dawson v. Delaware,* 503 U.S. 159, 164, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992); *see also State v. Skipper,* 285 S.C. 42, 47, 328 S.E.2d 58, 61 (1985) (*overruled on other grounds* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)). Appellant has not challenged this rule, and indeed, Appellant has made no discussion of these authorities (upon which the trial court directly relied).

### III. Alleged Inappropriate Remarks

Appellant argues that the Solicitor's comments during cross-examination of a witness and during closing arguments improperly injected racial issues into the trial. We disagree.

██ As a general rule, inflammatory remarks which are calculated to appeal to the passions or prejudices of a jury should be affirmatively condemned. *South Carolina State Highway Dep't. v. Nasim*, 255 S.C. 406, 411, 179 S.E.2d 211, 213 (1971). "[W]hether or not the particular arguments are so prejudicial as to constitute reversible error depends upon the nature of the utterances and the circumstances under which they were made." *Id.* Under certain circumstances, this Court will grant a new trial despite the aggrieved party's failure to contemporaneously object to the argument if the prejudice caused by the argument is clear. *Dial v. Niggel Assoc., Inc.*, 333 S.C. 253, 256, 509 S.E.2d 269, 271 (1998); *Toyota of Florence, Inc., v. Lynch*, 314 S.C. 257, 263, 442 S.E.2d 611, 615 (1994).

 Additionally, a solicitor's closing arguments in a capital trial should focus on the defendant's character, his background, and the nature of the crime. *State v. Reed*, 293 S.C. 515, 519, 362 S.E.2d 13, 15 (1987) (*overruled on other grounds by State v. Torrence*, 305 S.C. 45, 69, 406 S.E.2d 315, 328 (1991)). The arguments must be viewed in the context of the entire record, and the relevant question is whether the comments infected the trial with unfairness so as to make the resulting conviction a denial of due process. *State v. Patterson*, 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997).

As a starting point, we recognize that the terms "blond lady" and "King Kong" could have racial connotations. However, this court's jurisprudence does not prohibit the use of terms with racial meanings, nor does our case law stand for the proposition that arguments or evidence in a case must be void of racial allusions. Instead, this court has recognized that it is impermissible to use race to "inflame the passions or prejudices" of the jury. Accordingly, our inquiry focuses on how these terms were used in Appellant's case.

██ In our view, the "blond lady" remark was not made to inflame the passions or prejudices of the jury. If the State

had sought to make the race of Appellant's former lover an issue in this case, we believe they would have elicited evidence to this effect while examining their witness who testified extensively about the affair. Instead, this comment came while cross-examining a defense witness.

Furthermore, we find that even if this remark was inflammatory, it did not prejudice Appellant. This remark is a far cry from the outrageous and inflammatory evidence and arguments seen in *Nasim*, *Toyota*, *Dial*, and the cases cited by Appellant. The proper inquiry is not whether the Solicitor's remark was undesirable or condemnable, but whether the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In this case, the Solicitor made the "blond lady" comment only once and never referred to Appellant's lover's race again. Furthermore, this case involved a brutal murder, where guilt was clearly established. Accordingly, we find no evidence of prejudice from the "blond lady" remark.

Similarly, the Solicitor's use of the term "King Kong" was not an appeal to the passions or prejudices of the jury. The comment referred to Appellant's immense size, strength, and the destructiveness of his previous crimes. In this case, the trial court properly determined that Appellant's size and strength were probative of the aggravating circumstance of physical torture, which the court charged to the jury. In this regard, the Solicitor's use of the term "King Kong" was not suggestive of a giant black gorilla who abducts a white woman, but rather, descriptive of Appellant's size and strength as they related to his past crimes.

Also, Appellant's mitigation witnesses described him as "a gentle giant," "a big old teddy bear," "the Secretary of Defense," and "the Mediator." The defense used these terms to indicate Appellant was a changed man and not a threat to others. In this regard, the trial court correctly found that "King Kong" was an invited response to Appellant's mitigation evidence.

Finally, the Solicitor's "Caveman" comment was merely descriptive of two of Appellant's past violent incidents.

A witness to Appellant's ABHAN testified that she saw Appellant dragging the motionless body of one of the victims across a parking lot by the hair. Additionally, a prison guard testified about an incident where Appellant reached into another inmate's cell and dragged the inmate out by the hair. The Solicitor made this comment while describing how Appellant dragged his victims during these incidents, and, in our view, the comment was not inflammatory.

Based on the above reasoning, we hold that the Solicitor's comments did not improperly inject racial issues into the trial.[3]

## PROPORTIONALITY REVIEW

As required, we conduct a proportionality review of Appellant's death sentence. S.C.Code Ann. § 16–3–25(C) (2003). The United States Constitution prohibits the imposition of the death penalty when it is either excessive or disproportionate in light of the crime and the defendant. *State v. Copeland,* 278 S.C. 572, 590, 300 S.E.2d 63, 74 (1982). In conducting a proportionality review, we search for similar cases in which the death sentence has been upheld. *Id.;* S.C.Code Ann. § 16–3–25(E) (2003).

After reviewing the entire record, we conclude that the sentence in this case was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of similar prior cases illustrates that imposing the death sentence in this case would be neither excessive nor disproportionate in light of the crime and the defendant. *See State v. Huggins,* 336 S.C. 200, 205, 519 S.E.2d 574, 577 (1999) (holding that the death penalty was warranted where defendant robbed and shot the victim); *State v. Hicks,* 330 S.C. 207, 219, 499 S.E.2d 209, 216 (2998) (holding that the death penalty was proper where the defendant robbed the victim and stabbed him numerous times in the neck, chest, and abdomen); *and State v. Byram,* 326 S.C. 107, 120, 485 S.E.2d 360, 367 (1997) (holding that death sentence was proper where the defendant entered the victim's home, stabbed her to death, and stole the victim's handbag and automobile).

---

3. This conclusion makes an analysis of *Nasim,* Toyota and *Dial's* exception to the contemporaneous objection rule unnecessary.

CONCLUSION

For the foregoing reasons, we affirm.

MOORE, WALLER and BURNETT, JJ., concur.
PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES:

In 1988, twelve years before he murdered Benton Smith, appellant brutally assaulted two young men in a parking lot. He pled guilty to two counts of assault and battery of a high and aggravated nature (ABHAN), and received a Youthful Offender Act sentence. During this capital resentencing proceeding, the State introduced, without objection, graphic testimony from two eyewitnesses to the assault of the second ABHAN victim,[4] including one witness who observed appellant stomping on the unconscious victim's head. The second witness testified he saw appellant drag the prostrate victim by the hair, then kneel to punch him five or six times, then rise and kick and stomp the unconscious victim.

The State then called one of the victims' mothers to testify, and appellant objected on the grounds of relevance at a sidebar.[5] The objection was overruled, and the mother testified to receiving the call telling her to come to the hospital and the injuries to her son that she observed when she arrived. Over another relevancy objection, the State was permitted to introduce a photo of the victim taken while he was in intensive care. The mother was permitted to testify extensively to the details of her son's time in the hospital, his subsequent stay in a head trauma rehabilitation facility, and the lingering effects of the beating.

This mother's testimony was followed by that of her son. Appellant's objection at a sidebar, again on the ground of relevancy, was overruled and the victim was permitted to relate a dream he had had while hospitalized about being chased by "Black Indians." The State then called, over another unsuccessful relevancy objection, the mother of the

---

4. Both victims were lying motionless in the parking lot, "obviously injured." The scene was quite bloody.

5. The judge later put the grounds of the objection on the record.

second victim. This woman testified, as had the first mother, to her observations of her son's injuries, recovery, rehabilitation, and residual problems.

I agree with the majority that evidence of a defendant's prior criminal record is admissible in a capital sentencing proceeding because it is relevant evidence of the defendant's character. The Constitution requires that the decision whether to impose a death sentence be "an *individualized* determination [made] on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (italics in original). Further, I agree that, in furtherance of the jury's understanding of the defendant's character, the State should not be limited to merely presenting the fact of the prior conviction as it would be were the purpose to impeach the defendant's veracity. *See State v. Gregg*, 230 S.C. 222, 95 S.E.2d 255 (1956). I do not agree, however, that the extensive testimony admitted here, from eyewitnesses, victims, and relatives of the victims of offenses wholly unrelated to the capital offense, are relevant to the issue of the appellant's character. Nor can I agree that the dream of a victim of a prior crime is, under any stretch of the imagination, relevant to "the character of the individual or the circumstances of the [capital] crime." *Zant, supra.*

The Constitution permits the sentencing authority to consider "the specific harm caused by the crime in question" through the State's introduction of "evidence about the victim and about the impact of the murder on the victim's family" because such evidence is relevant to the "defendant's moral culpability and blameworthiness" as it relates to the capital murder. *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In other words, this type of evidence is admissible because it is relevant to the circumstances of the crime, not because it is relevant to the defendant's character. *Id.*

I agree with the majority that the State's evidence in this case cannot be characterized as victim-impact evidence under *Payne* since it does not relate to the murder victim or his family. In fairness to appellant's attorneys, however, they concede that this evidence would have been admissible under *Payne* if related to the capital crime rather than to these unrelated prior offenses. Specifically, appellant's trial objec-

tion was to the evidence "as being inappropriate, victim impact type information and having nothing to do with the particular trial that [appellant] is on trial for now." Moreover, appellant's attorney in this appeal concedes this type of evidence may be admissible as it relates to the victim of the capital crime, but argues "[t]here is no language in *Payne* authorizing victim impact evidence on unrelated crimes...." I agree with appellant that the trial court erred in admitting this irrelevant evidence.

The Constitution limits even valid victim-impact evidence where it is unduly inflammatory or renders the sentencing proceeding fundamentally unfair. *Payne, supra* (Justice O'Connor, concurring). Here, the capital sentencing jury was overwhelmed with evidence of appellant's "moral culpability and blameworthiness," not for the murder of Benton Smith, but for the brutal beatings of two young men.[6] In my opinion, the State's presentation of this evidence denied appellant a fair sentencing and encouraged the jury to impose a death sentence on an improper basis. *Zant, supra* (character of the defendant and circumstances of the capital crime are relevant to determining sentence).

I therefore dissent from the majority's decision to affirm appellant's sentence.

---

6. This evidence was exploited by the solicitor in his closing argument.