485 S.E.2d 360

**The STATE, Respondent,**

v.

**Jason Scott BYRAM, Appellant.**

No. 24608.

Supreme Court of South Carolina.

Heard Oct. 16, 1996.

Decided April 28, 1997.

Rehearing Denied May 21, 1997.

108

110

Assistant Appellate Defender Lesley M. Coggiola of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, and Solicitor W. Barney Giese, Columbia, for respondent.

BURNETT, Justice.

Appellant was convicted of murder, first degree burglary, attempted armed robbery, and grand larceny of a motor vehicle. He was sentenced, respectively, to death, life imprisonment, twenty years' imprisonment, and ten years' imprisonment.[1] This appeal consolidates his direct appeal with the mandatory review provisions of S.C.Code Ann. § 16–3–25 (1985). We affirm.

---

1. The jury found the statutory aggravating circumstances of burglary and robbery while armed with a deadly weapon.

## ISSUES

I. Did the trial court err by excluding evidence that Jim Doe was the accomplice referred to in appellant's statement?

II. Did the trial judge err by refusing to instruct the jury on parole eligibility?

III. Did the trial judge err by allowing excessive victim impact evidence?

IV. Did the trial judge err by allowing television cameras in the courtroom during the sentencing phase of trial?

## DISCUSSION

### I.

Appellant argues the trial judge erred by prohibiting him from introducing evidence that "Jim Doe" was the accomplice referred to in his statement.[2] He claims this evidence was not introduced to prove his innocence, but rather in mitigation of punishment. Appellant contends the trial judge's exclusion of this evidence violated the Eighth and Fourteenth Amendments to the United States Constitution.[3] We disagree.

During the guilt phase of trial, the evidence revealed that on Sunday, May 23, 1993, at approximately 3:00 a.m. the victim's home was broken into, her handbag and white van were stolen, and she was stabbed to death with her own butcher knife. Appellant was arrested later that afternoon. He gave a statement to the police in which he admitted entering the victim's home and stabbing her to keep her quiet. Appellant stated he had an accomplice named "Jim" whom he described as 5'7" tall, 180 pounds, bald-headed, and in his thirties. He stated he met Jim on May 22, 1993, outside of a particular gay bar. In his statement, appellant suggested Jim was the principal of the crimes and stated Jim repeatedly stabbed the victim.

According to testimony, the police attempted to locate "Jim," but found no one who matched the description and had

---

**2.** At trial, appellant named a specific individual as his accomplice. We will refer to this individual as "Jim Doe."

**3.** U.S. CONST. amend. VIII and U.S. CONST. amend. XIV.

been at the named gay bar or in the area on the evening of May 22, 1993. The manager of the bar testified the club is private and a person must either be a member or be with a member and fill out documentation to enter. He testified appellant was not a member of the club and did not enter the club on May 22, 1993. The manager further testified he patrols the parking lot of the club for vandals and saw no vans in the parking lot on the evening of May 22 or early on May 23. The manager stated he knew of no club member named "Jim" who was in his thirties, 5'7" tall, 180 pounds, and bald-headed.

The victim's husband and a police officer testified the victim's statements before she died indicated only one person was involved in the assault.

An individual who rented a room in the same boarding house as appellant, and who was mentioned in appellant's statement, testified he saw appellant around 12:00 a.m. on May 23, 1993, in a white van. He stated appellant had blood on his shirt. The witness asked appellant who owned the van, and was told it belonged to a friend and not to tell anyone about it. The witness testified he did not see anyone else in the van.

At the close of the State's case, appellant stated he was prepared to introduce testimony regarding the identity of "Jim." The solicitor objected and the trial judge allowed appellant to proffer evidence regarding the identity of "Jim." Appellant explained the purpose of the proffered evidence was to bolster the statement he had given to the police. Noting the proffered evidence only speculated the "Jim" in appellant's statement was Jim Doe and the evidence was not inconsistent with appellant's guilt, the trial judge denied appellant's motion to admit evidence that "Jim" was Jim Doe.[4]

4. The trial judge relied on a line of cases which hold evidence offered by an accused as to another's commission of the crime charged must be limited to facts inconsistent with the accused's guilt and raise a reasonable inference or presumption of his innocence. Evidence which merely casts bare suspicion on another or raises conjectural inference as to his commission of crime is inadmissible. *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996); *State v. Southerland,* 316 S.C. 377, 447 S.E.2d 862 (1994), *cert. denied,* 513 U.S. 1166, 115 S.Ct. 1136, 130

■ As noted above, appellant now argues the proffered evidence was offered in mitigation of punishment, not to prove his innocence. The trial judge did not rule on this issue. Accordingly, the issue is not preserved for appeal. *State v. McWee,* 322 S.C. 387, 472 S.E.2d 235 (1996) (a constitutional argument is not preserved for appeal where appellant failed to argue the constitutional basis for his request at trial); *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (1995) (a party cannot argue one ground below and then argue another ground on appeal).

■ In any event, even if appellant had offered the testimony for the purpose of mitigating his sentence, the proffered evidence would still not have been admissible. While the Eighth Amendment prohibits the sentencer in capital cases from being precluded from considering as a mitigating factor any circumstance of the offense, such as the defendant's minor participation, for the purpose of imposing a sentence less than death,[5] the evidence offered must still be properly admissible.

Here, appellant proffered the testimony of four witnesses. One witness ("the bartender") testified his memory of May 22, 1993, was very weak, but he thought he was probably working as a bartender at a gay club on that evening. (The bartender did not work in the same club mentioned in appellant's statement). The bartender stated he thought on that evening a patron came into the club and later spoke with Jim Doe. The bartender described Jim Doe as 5'6" to 5'8" tall, possibly taller, 185 pounds, with medium brown hair, thinning on top. The bartender testified he could not recall whether he had ever seen appellant at the club or whether Jim Doe and appellant ever met at the club.

The patron testified he went with appellant to the club mentioned by the bartender between April and May 23, 1993, where he "set up" appellant with a very tall man (taller than 6'0") who weighed between 190 and 200 pounds and had a

---

L.Ed.2d 1096 (1995); *State v. Parker,* 294 S.C. 465, 366 S.E.2d 10 (1988); *State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941).

**5.** *See, Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

receding hairline. The patron testified he was sure the "set up" was not on May 22, 1993, and stated he did not know the man's name. The patron testified he knew one man named "Jim" who was very short, thin, and had a harelip.

The former manager of this same club testified two days before appellant's trial an investigator from the Public Defender's Office asked him if he knew Jim Doe. The manager stated he knew Jim Doe and described him as 5'10" tall, 210 pounds, with a receding hairline. The manager offered no testimony indicating he had ever seen Jim Doe with appellant.

Over the solicitor's objection and contrary to the bartender's testimony, an investigator with the Public Defender's Office testified the bartender had told him he believed "Jim" was Jim Doe and he had seen appellant leave the club on May 22, 1993, with Doe. The investigator stated Doe contacted him. The investigator met with Doe and described him as a white male, approximately 40 years old, about 5'8" tall, 175–180 pounds, with brown hair, balding in the front. The investigator testified Doe denied knowing appellant. Appellant did not call Doe as a witness. Appellant did not testify.

 The only proffered evidence which places appellant with Jim Doe at any time was the testimony from the investigator.[6] However, this testimony impeached that of appellant's other witness, the bartender, and was, therefore, inadmissible. *State v. Anderson,* 304 S.C. 551, 406 S.E.2d 152 (1991) (a party must vouch for its own witness and may not impeach its witness unless the witness is declared hostile upon a showing of actual surprise and harm).[7] Accordingly, while appellant was entitled to offer in mitigation evidence that he was only a minor participant in the murder, he produced no relevant, admissible evidence which indicated Jim Doe was with him on

---

6. Appellant's identification of a male with the common name "Jim" and with ordinary characteristics which fit the description of "Jim" in appellant's statement is, alone, not relevant evidence in mitigation. At issue was whether appellant actually knew Jim Doe and whether Jim Doe could have been the accomplice to the murder. *State v. McWee, supra* (evidence is relevant if it tends to make a fact in issue more or less probable).

7. Under Rule 607, SCRE, which became effective approximately six months after appellant's trial, a party may attack the credibility of its own witness.

the morning of the murder and was the accomplice referred to in his statement.[8]

## II.

Appellant argues the trial judge erred by refusing to instruct the jury on parole eligibility after the solicitor argued his future dangerousness to the jury. We disagree.

At the close of the sentencing phase, appellant requested the trial Judge instruct the jury if it did not recommend a sentence of death but found a statutory aggravating circumstance, appellant would be ineligible for parole for thirty years, and if the jury did not find a statutory aggravating circumstance, appellant would be ineligible for parole for twenty years. The trial judge denied appellant's request and stated he would give the "plain meaning charge" on the terms "life imprisonment" and "death penalty."

The State concedes the prosecution focused upon appellant's future dangerousness during portions of its closing argument.

■ Since appellant was eligible for parole if a life sentence was imposed, he was not entitled to a charge on parole eligibility.[9] *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); *State v. Williams, supra; State v. McWee, supra* (where the defendant's future dangerousness is at issue and state law prohibits the defendant's release on parole, due process requires the sentencing jury be informed the defendant is ineligible for parole); *State v. Tucker, supra.*

---

8. Based on appellant's statement to the police, the court instructed the jury on mere presence, accomplice liability, and "the hand of one is the hand of all" during the guilt phase of trial. During the sentencing phase, the trial judge instructed the jury it must focus on appellant's own personal culpability in determining the appropriate sentence and could not impose the death penalty unless the State proved beyond a reasonable doubt appellant personally killed the victim or else personally intended that a killing take place or lethal force be used. Further, the trial judge instructed the jury it could consider in mitigation circumstances such as the defendant was an accomplice in the murder committed by another and his participation was relatively minor, and the defendant acted under duress or the domination of another person. *See,* S.C.Code Ann. § 16–3–20(C)(b)(4) and (5) (Supp.1995).

9. *See,* S.C.Code Ann. § 16–3–20(A) (Supp.1995).

Appellant further argues the solicitor misled the jury about the conditions of incarceration and the likelihood of his parole and, therefore, the trial judge should have charged the jury on parole eligibility. We disagree.

Initially, we note appellant never stated this argument in support of his requested charge on parole eligibility. Consequently, this issue is not preserved for appeal. *State v. McWee, supra.*

■ In any event, during closing, the solicitor argued as follows:

There is only one sentence that will ensure that [appellant] will never do this to anyone again. Anyone. That [appellant] will never cause anymore pain, anymore suffering to anyone and you know that one sentence is. It is the only sentence that is dispositive. . . .

Anything less than death in this case is a victory for this man. It's a victory for him. But, you know, he's already had one victory in this case. He had the victory over that defenseless woman the night this took place. Don't give him another victory.

This argument does not refer to the conditions of appellant's incarceration or the likelihood of his parole. Accordingly, the trial judge properly refused to instruct the jury on parole eligibility.

## III.

Appellant argues the trial judge violated his rights under the Eighth Amendment and Fourteenth Amendment due process clause by allowing excessive victim impact evidence and an improper reference to this testimony during the solicitor's closing argument. Appellant asserts this was error because the State failed to provide adequate notice of the particular victim impact evidence it intended to use as required by S.C.Code Ann. § 16–3–20(B) (Supp.1995). We disagree.

Prior to trial, appellant filed a Motion for More Definite Statement of Evidence in Aggravation. Attached to this motion was the solicitor's letter of February 7, 1995, in which he notified appellant, pursuant to Section 16–3–20(B), of the

four categories of aggravating evidence he intended to introduce. The fourth of these categories stated as follows:

4. Any and all evidence concerning the "Victim Impact" evidence relating to [the victim's] personal characteristics and the emotional impact of the murder on [the victim's] family and school children, pursuant to *Payne v. Tennessee,* [501 U.S. 808] 111 S.Ct. 2597 [115 L.Ed.2d 720] (1991); *State v. Johnson,* [306 S.C. 119] 410 S.E.2d 547 (1991); and *Lucas v. Evatt,* [308 S.C. 31] 416 S.E.2d 646 (1992).

Appellant also filed a Motion to Bar Victim Impact Evidence and Statements.

At the conclusion of the State's case during the guilt phase of trial, appellant moved to prohibit all victim impact testimony. This motion was denied. Thereafter, he moved to limit the victim impact evidence to specific harm and the impact on the victim's family. The solicitor informed appellant he would be offering testimony from the victim's teacher assistant, a parent of one of the victim's emotionally handicapped students, the victim's sister, and the victim's husband, and he stated the purpose for each of these witnesses' testimony. At the beginning of the sentencing phase, the trial judge ruled the notice provided was adequate under Section 16–3–20(B).

During the sentencing phase, the solicitor offered the four witnesses he had previously stated he would present. Betty Satterfield, the teacher's assistant, testified the victim was a wonderful teacher of emotionally handicapped children and the victim's students were devastated to learn of their teacher's death. Vickie Wells, a parent of one of the victim's students, testified the victim had a positive impact upon her son. The victim's sister testified about the effect of the victim's death upon herself and the victim's three children. The victim's husband also testified about the impact of his wife's death on their children. Appellant did not object to any of this testimony.

■ Pursuant to Section 16–3–20(B) [10] the State was not required to provide appellant with notice it intended to introduce victim impact testimony. *State v. Humphries,* 325 S.C.

---

10. Section 16–3–20(B) provides "[o]nly such evidence in aggravation as the State had made known to the defendant in writing prior to the trial shall be admissible."

28, 479 S.E.2d 52 (1996) (victim impact evidence is not evidence in aggravation and, therefore, the State is not required to notify a defendant pursuant to Section 16–3–20(B) it intends to present victim impact evidence). Accordingly, there was no error.

■ In any event, by the solicitor's letter of February 7, 1995, appellant was provided with notice of the victim impact evidence the State intended to introduce.[11] The notice informed appellant the State would introduce evidence of the victim's personal characteristics and the impact of her death on her family and students. This is exactly the evidence the State presented at trial.

■ Finally, appellant expressed no objection to any portion of the witnesses' testimony. Accordingly, whether their testimony was excessive or unduly prejudicial is not preserved for review. *State v. Tucker, supra* (where appellant did not object to victim impact evidence as excessive and unrestricted at trial, the argument was not preserved for review).

■ In any case, the victim impact evidence which was introduced showed the specific harm committed by appellant in murdering the victim. This testimony was relevant for the jury to meaningfully assess appellant's moral culpability and blameworthiness and not so unduly prejudicial as to render appellant's trial fundamentally unfair. Therefore, the victim impact evidence did not violate appellant's rights under the Eighth Amendment or Fourteenth Amendment due process clause. *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (Eighth Amendment did not establish a *per se* bar prohibiting the jury from considering or the solicitor from arguing victim impact); *Riddle v. State*, 314 S.C. 1, 443 S.E.2d 557 (1994), *cert. denied*, 513 U.S. 1003, 115 S.Ct. 518, 130 L.Ed.2d 424 (testimony by victim's stepdaughter as to victim's standing in community, victim's grandchildren, and impact of the murder on the witness was proper); *State v. Rocheville*, 310 S.C. 20, 425 S.E.2d 32 (1993), *cert. denied*, 508

11. The case was called to trial on February 27, 1995.

U.S. 978, 113 S.Ct. 2978, 125 L.Ed.2d 675, reh. denied, 509 U.S. 942, 114 S.Ct. 21, 125 L.Ed.2d 772 (parents' testimony about their families' reliance on their murdered sons and their sons' dreams and aspirations was proper); *Lucas v. Evatt,* 308 S.C. 31, 416 S.E.2d 646 (1992); *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992).

## IV.

Prior to trial, appellant moved to exclude the television media from the courtroom. He argued the video media was sensationalizing the trial. The trial judge held he had no discretion to exclude the television media without excluding other forms of media.

Appellant now argues the trial judge erred by permitting television cameras in the courtroom during sentencing because the television publicity affected the witnesses who wanted a reasonable degree of privacy, placed extraneous pressure on the jury in making its sentencing decision, and prevented him from receiving a fair sentencing determination. We disagree.

Appellant's argument was neither raised to nor ruled upon by the trial judge. Accordingly, it is not preserved for appellate review. *State v. Tucker,* supra.

In any event, the trial judge erroneously concluded he had no authority to prohibit the television media from filming appellant's trial. Under Rule 605(f)(3), SCACR, the presiding judge has full discretion to "refuse, limit, or terminate media coverage of an entire case, portions thereof, or testimony of particular witnesses as may be required in the interests of justice." *See also In the Matter of Decker,* 322 S.C. 215, 471 S.E.2d 462 (1995) (the press may constitutionally be prohibited from publishing information about trials if necessary to assure a fair trial by an impartial tribunal). Rule 605 implicitly authorizes the trial judge to preclude trial coverage by a particular media when the interests of justice so require.

■ Nonetheless, despite the trial judge's erroneous conclusion, there is no evidence appellant was prejudiced by having television cameras in the courtroom during the sentencing phase of trial.[12] None of the witnesses during the sentencing phase requested privacy in presenting their testimony. Further, the trial judge prohibited the press from photographing or recording the jury and from disseminating the jurors' names. The trial judge informed the jury venire they would not be photographed or televised. Additionally, in charging the jury during the sentencing phase, the trial judge instructed the jury it could not be governed by public opinion or any other arbitrary factor in determining appellant's sentence. Accordingly, any error was harmless. *State v. McWee,* *supra* (error which does not result in prejudice does not warrant reversal).

## PROPORTIONALITY REVIEW

■ After reviewing the entire record, we conclude the death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of statutory aggravating circumstances is supported by the evidence. See S.C.Code Ann. § 16–3–25 (1985). Further, we hold the death penalty is neither excessive nor disproportionate to that imposed in similar cases. *See State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996); *State v. McWee, supra; State v. Hudgins,* 319 S.C. 233, 460 S.E.2d 388 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 821, 133 L.Ed.2d 764 (1996); *State v. Young,* 319 S.C. 33, 459 S.E.2d 84 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996).

**AFFIRMED.**

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.

---

12. In fact, in referring to his ability to establish prejudice from television coverage of the trial, appellant's counsel stated he was "well aware of the burden I probably can't reach."