498 S.E.2d 640

**John Babe RAY, Jr., Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

No. 24774.

Supreme Court of South Carolina.

Heard Oct. 4, 1995.

Decided March 23, 1998.

Rehearing Denied April 27, 1998.

Assistant Appellate Defender Robert M. Pachak, of S.C. Office of Appellate Defense, Columbia, for petitioner.

Attorney General Charles Molony Condon, Chief Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Harold M. Coombs, Jr., and Assistant Attorney General William Edgar Salter, III, Columbia; and Solicitor Holman C. Gossett, Jr., Spartanburg, for respondent.

PER CURIAM:

This is a death penalty case. Petitioner[1] raises two issues on certiorari from his resentencing, one relating to the admission of certain photos and the second to the sufficiency of the evidence of the aggravating circumstance of kidnapping. We consider those issues, conduct the review mandated by S.C.Code Ann. § 16–3–25(C) (1985), and affirm.

Petitioner Ray pled guilty[2] to murder and to unrelated charges of armed robbery, assault and battery with intent to kill (ABIK), first degree burglary, and grand larceny in 1991. The State sought the death penalty on the murder charge. After a hearing, the judge imposed a death sentence, finding kidnapping as the aggravating circumstance. Ray received consecutive sentences on the unrelated crimes. Ray appealed only his murder plea and sentence.

On appeal, this Court affirmed the murder conviction but reversed and remanded for resentencing. *State v. Ray*, 310 S.C. 431, 427 S.E.2d 171 (1993). On remand, Ray was again sentenced to death by the circuit judge sitting without a jury. This writ followed.

## FACTS

Petitioner and several other individuals engaged in a course of criminal conduct, among other things stealing guns which they secreted in a barn. The victim, Josylin Ballenger, was a teenage girl who dated one of the men involved in the crime spree. Petitioner and others in the group suspected the victim was about to turn them in to the police. Late one evening, petitioner, the victim, and several others were gathered at the barn when petitioner shot the victim in her side.

The people at the barn agreed to take the victim, who remained conscious, to the hospital emergency room. Petitioner got in the back of the victim's pickup truck, and the victim got in the back and leaned against him. Petitioner and

---

1. This matter is before the Court pursuant to a common law writ of certiorari. Petitioner's trial attorneys neglected to file a timely appeal, necessitating this extraordinary relief.

2. Pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

the truck's driver had several conversations through the truck cab's sliding window on the way to the hospital, and at one point the truck stopped and someone (either petitioner or the driver) made a quick phone call. A passenger in the bed of the truck testified that shortly after the phone call, the truck drove past the highway exit leading to the hospital, and proceeded towards a rural area. As the truck turned onto a dirt road, petitioner began to choke the victim with a length of cord taken by him from the barn.

When the truck stopped at an isolated junkyard, petitioner began to beat and kick the victim. He then took a knife and stabbed her at least four times, the last time so deeply that he had to use both hands to pull it out. Petitioner licked the blood off the knife blade, made a sexual reference, and said, "I want to do somebody else. You get as much time for killing a hundred as you do for killing one." Petitioner and the driver dumped the victim's body head first into an abandoned well, and debris was thrown in on top of her. Petitioner then attempted to shoot one of the eyewitnesses whom he believed had exhibited signs of faint-heartedness during the murder, but the gun jammed.

## ISSUES

Petitioner first contends he was deprived of a fair sentencing proceeding because the State was permitted to introduce five color photos of petitioner's ABIK victim and eleven color autopsy photos of the victim. We find no reversible error under the circumstances of this resentencing proceeding.

Petitioner's crime spree commenced when he and several other young men assaulted and robbed Glen Sellars. Petitioner and the others beat Mr. Sellars in the head with nightsticks and fists to the point that witnesses at the scene saw Sellars' exposed brain. The evidence showed that during the assault petitioner bit off Sellars' ear, and several of Sellars' teeth were knocked out. It took over 100 stitches to close his head wounds, his jaws were wired shut, and Mr. Sellars spent at least seven days in the hospital. The photos admitted at the resentencing, taken at the hospital the day after the beating, are shocking and illustrate a savage beating. On the other

hand, the autopsy photos at issue depict the victim's body in a "cleaned-up state", and allowed the pathologist to illustrate his testimony regarding the victim's pre- and peri-mortem wounds.

The general rules governing the admission of photographs in a criminal trial are clear. It is well established that photographs are relevant to show both the circumstances of the crime and the defendant's character, and are admissible in a sentencing proceeding unless unfairly prejudicial. *State v. Franklin,* 318 S.C. 47, 456 S.E.2d 357 (1995); *State v. Shaw,* 273 S.C. 194, 255 S.E.2d 799 (1979). Unfair prejudice exists where the photos tend to suggest the penalty decision should be based on an improper basis such as emotion. *State v. Franklin, supra.*

We conclude the autopsy photos are not inflammatory, were illustrative of the forensic testimony, and were properly admitted. *State v. Franklin, supra.* We are somewhat troubled by the gory photos of Mr. Sellars. Evidence of other crimes committed by the defendant is admissible at the sentencing phase of a capital trial. There is neither an assertion, nor any evidence, that this judge was improperly influenced by the photographs. We find no reversible error under these circumstances.

Petitioner next argues there was insufficient evidence that the murder was committed in the course of a kidnapping. Since kidnapping was the sole aggravating circumstance upon which the State relied in seeking the death penalty, petitioner contends the judge should have directed a sentence of life imprisonment. We disagree.

The victim was inveigled into getting in the truck under the pretense she was being taken to the hospital. Petitioner's intent *not* to take her to the hospital is evidenced by his taking the rope from the barn before they left. This conduct constituted kidnapping under S.C.Code Ann. § 16–3–910 (Supp. 1994). At the latest, the kidnapping occurred when they passed the last exit to the hospital. The "directed verdict" was properly denied. *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984).

## PROPORTIONALITY REVIEW

██ We have reviewed petitioner's sentence pursuant to S.C.Code Ann. § 16–3–25(C) (1985). We find the evidence supports the statutory aggravating circumstance of kidnapping, and that the sentence is not the result of passion, prejudice or any other arbitrary factor. Further, we find the death sentence here is proportional to that imposed in *State v. Owens,* 293 S.C. 161, 359 S.E.2d 275 (1987); *State v. Koon,* 285 S.C. 1, 328 S.E.2d 625 (1984); and to that imposed on appellant Arnold in *State v. Plath, supra.* Accordingly the sentence is

**AFFIRMED.**