678 S.E.2d 807

**Mikal D. MAHDI, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 26671.**

Supreme Court of South Carolina.

Heard Feb. 18, 2009.

Decided June 15, 2009.

Appellate Defender Kathrine H. Hudgins, of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General J. Anthony Mabry, all of Columbia, and Solicitor David Michael Pascoe, Jr., of Orangeburg, for Respondent.

Justice PLEICONES:

Petitioner[1] pleaded guilty to murder, second degree burglary, and grand larceny. The trial judge imposed a death sentence for murder finding two aggravating circumstances,[2] and consecutive sentences of fifteen years (burglary) and ten years (larceny). This opinion combines the issue raised on certiorari and the sentencing review mandated by S.C.Code Ann. § 16–3–25 (2003). We affirm.

## FACTS

On July 15, 2004, petitioner killed an employee while robbing a gas station in North Carolina. Petitioner shot the North Carolina victim twice in the face at point blank range using a gun he had stolen from his grandmother's neighbor. He was driving a vehicle stolen from Virginia, on which he had placed stolen license plates. Two days later, petitioner carjacked a man in Columbia at 3:30 a.m. using the same weapon. Early that same morning, petitioner pulled into the Wilco Travel Plaza located off Interstate 26 in Calhoun County. Employees at the Travel Plaza became suspicious when petitioner was repeatedly unable to purchase gasoline from the pumps, while attempting to use stolen credit and/or check cards. The employees called law enforcement, and when officers arrived, petitioner fled on foot. He ran to a nearby farm property owned by Captain and Mrs. Myers.[3] The Myers did not reside on the rural property, but there was a

---

1. The Court agreed to issue a writ of certiorari to consider this case since no timely notice of appeal was served. *See Ray v. State,* 330 S.C. 184, 498 S.E.2d 640 (1998).

2. Murder in the commission of a burglary, S.C.Code Ann. § 16–3–20(C)(a)(1)(c) (Supp. 2008) and in the commission of larceny involving the use of a deadly weapon, § 16–3–20(C)(a)(1)(e).

3. Captain Myers was a captain with the Orangeburg Department of Public Safety.

shed in which they kept equipment and in which Mrs. Myers had an office.

Petitioner found a .22 caliber semi-automatic rifle in the shed where he apparently spent the day. When Captain Myers stopped by the farm that evening, petitioner shot him nine times with the .22: three bullets struck the victim in the head. Petitioner then poured diesel fuel over the body and lit it. He stole Myers' truck and various firearms from the shed and drove to Florida, where he was arrested three days later after a chase.

After a jury was selected but before it was sworn, petitioner elected to enter a guilty plea to the charges of murdering Captain Myers, burglarizing the shed, and stealing the personal property. The trial judge conducted a sentencing hearing, following which he issued an eleven and a half page sentencing order.

## ISSUE

Whether petitioner's capital sentence should be reversed because the trial judge improperly based his decision to impose a death sentence on petitioner's assertion of his right to a jury trial, thereby effectively punishing him for exercising this constitutional right?

## ANALYSIS

Petitioner's argument relates to the following passage from the sentencing order, which is the last paragraph in the section of the order titled "Mitigating Circumstances:"

The defense further argues as non-statutory mitigating circumstance that the Court should consider the Defendant's guilty plea in determining the appropriate sentence to be imposed. The Defendant's guilty plea occurred during the fourth day of his trial, following jury selection but prior to the jury being sworn. This was one day following his attempted escape through the use of the homemade key. In addition, Mr. Mahdi has failed to demonstrate any remorse for his actions at any point in time known to the Court. Therefore, I conclude that no significant weight should be given to this non-statutory mitigating circum-

stance in the Court's ultimate decision as to the sentence to be imposed.

■ Petitioner contends this paragraph, specifically the second sentence, "The Defendant's guilty plea occurred during the fourth day of his trial, following jury selection but prior to the jury being sworn," demonstrates the judge improperly punished petitioner for initially exercising his right to a jury trial. *See e.g. State v. Hazel,* 317 S.C. 368, 453 S.E.2d 879 (1995) (judge cannot consider defendants exercise of right to jury trial sentencing). The State maintains, to the contrary, that this sentence is merely a factual recitation, or at most a partial explanation why the judge declined to consider the plea as a significant mitigator, but that it is not indicative of any punitive intent. Since, as petitioner conceded at oral argument, there was no objection to this passage at trial, no issue has been preserved for this Court's review. *State v. Owens,* 378 S.C. 636, 664 S.E.2d 80 (2008) (strict error preservation rules apply to capital cases).

## *PROPORTIONALITY REVIEW*

■ Pursuant to § 16–3–25(c), we have conducted a proportionality review and find the death sentence was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of other decisions demonstrates that petitioner's sentence is neither excessive nor disproportionate. *See e.g. State v. Byram,* 326 S.C. 107, 485 S.E.2d 360 (1997) (capital sentence upheld where aggravators were burglary and armed robbery).

## *CONCLUSION*

Petitioner's conviction and sentences are

**AFFIRMED.**

WALLER, BEATTY and KITTREDGE, JJ., concur.

TOAL, C.J., concurring in a separate opinion.

Chief Justice TOAL, concurring:

Although I concur with the majority, I write separately to record the facts of this particularly heinous case.

On July 14, 2004, Petitioner, then a resident of Virginia, embarked upon a crime spree that would span four states. Petitioner stole a .380 caliber pistol from his neighbor, a set of Virginia license plates, and a station wagon. Petitioner left Virginia and headed to North Carolina.

On July 15, Petitioner entered an Exxon gas station in Winston–Salem, North Carolina armed with the .380 pistol. Petitioner took a can of beer from a cooler and placed it on the counter. The store clerk, Christopher Jason Boggs, asked Petitioner for identification. As Boggs was checking Petitioner's identification, Petitioner fatally shot him at point-blank range. Petitioner fired another shot into Boggs as he lay on the floor. Petitioner then attempted unsuccessfully to open the store's cash register. Petitioner left the store with the can of beer, and headed to South Carolina.

Early in the morning of July 17, Petitioner approached Corey Pitts as he sat at a traffic light in downtown Columbia, South Carolina. Petitioner stuck his gun in Pitts' face, forced him out of his car, and stole Pitts' Ford Expedition. Petitioner replaced the Expedition's license plates with the plates he had stolen in Virginia, and headed southeast on I–26.

About thirty-five minutes down the road, Petitioner stopped at a Wilco Hess gas station in Calhoun County and attempted to buy gas with a credit card. The pump rejected the card, and Petitioner spent forty-five minutes to an hour attempting to get the pump to work. Due to his suspicious behavior, the store clerks called the police. Aware that the clerks' suspicions had been alerted, Petitioner left the Expedition at the station and fled on foot through woods behind the station.

About a quarter to half mile from the station, Petitioner came upon a farm owned by Captain James Myers, a thirty-one year veteran law enforcement officer and fireman. Petitioner broke into a work shop on the Myers property. Once inside the work shop, Petitioner watched television and examined Myers' gun collection. Petitioner found Myers' shotgun and used the tools in the shop to saw off the barrel and paint it black. Petitioner also took Myers' .22 caliber rifle and laid in wait for Myers.

That day, Myers had been at the beach celebrating the birthdays of his wife, sister, and daughter. Myers had visited

with his father before returning to his farm. Upon arriving at the farm, Myers stopped by the work shop, where he was confronted by Petitioner. Petitioner shot Myers nine times with the .22 rifle. Petitioner then poured diesel fuel on Myer's body and set the body on fire. Petitioner stole Myers' police-issued truck, and left with Myers' shotgun, his .22 rifle, and Myers' police-issued assault rifle.

Later that evening, Myers' wife, also a law enforcement officer, became worried when Myers did not return home. Mrs. Myers drove to the work shop and discovered Myers' burned body lying in a pool of blood.

Petitioner escaped to Florida, where he was spotted by police on July 21 driving Myers' truck. Fleeing the police, Petitioner abandoned the truck on foot in possession of the assault rifle. When cornered by police, Petitioner abandoned the rifle and was eventually taken into custody.

I recite these facts to emphasize the egregious nature of Petitioner's crimes. In my time on this Court, I have seen few cases where the extraordinary penalty of death was so deserved. I therefore concur with the majority and vote to affirm Petitioner's conviction and sentence.